[Crim. No. 4544.   Second Dist., Div. Two.   Feb. 9, 1951.]

THE PEOPLE, Respondent, v. ALBERT DOUGLAS DEVERICH, Appellant.

Jules J. Covey and Ward Sullivan for Appellant.

Fred N. Howser, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

McCOMB, J.—From a judgment of guilty of (a) conspiracy to steal an automobile, and (b) grand theft, after trial before a jury, defendant appeals. There is also an appeal from the order denying his motion for a new trial.

*Facts*: From the testimony of an admitted accomplice of defendant the record discloses that about the first of October, 1949, defendant stated to his accomplice, Mr. Sanders, that he was desirous of obtaining an automobile; later Sanders introduced defendant to Al Gordon at which time defendant stated he was interested in getting a stolen automobile. He drew a map of roads leading to his house and garage and told Gordon that if he found anybody who would steal a car, the thief would know the way to his garage by use of the map.

On the evening of October 9, 1949, Sanders called for defendant at his home and they drove to Big Town Motors, a used car lot at the corner of Fourth Street and Vermont Avenue in Los Angeles. On the used car lot there was a 1949 Cadillac for sale. There was a set of keys in the glove compartment of the car and another set in the ignition. Defendant and Sanders talked with Mr. Prager, a salesman for the Big Town Motors business, relative to the 1949 Cadillac. Defendant entered the car through the door on the driver's side and sat in it. Without looking at any other cars they left the lot, and as they were driving away defendant gave Sanders a set of keys and said they were the keys to the Cadillac they had just been looking at. Defendant said to give the keys to Al Gordon.

After leaving defendant at his home, Sanders went to a show with Evelyn Phillips. After the show as they were

driving they noticed Al Gordon in a gas station whereupon they stopped and Sanders told Gordon that they had a car in mind, where it was, and that he had the keys to it. Gordon then got into the automobile with Sanders and Phillips and they drove to the Big Town Motors lot where Sanders pointed out the car and then drove down the street a block and parked. Sanders then gave Gordon the keys to the Cadillac at which they had just been looking. Gordon went to the used car lot and drove the 1949 Cadillac to Franklin Avenue just above Cahuenga where he met Sanders who told him to park the Cadillac on a side street which he did.

The three then went to defendant's home and Sanders told him that Gordon had the car. Defendant said, "Don't bring the car over here because I just got a phone call from my uncle and he told me that he had some information that I had been taking too many hot cars up north, and that I couldn't have any more cars around my house that were hot like that."

Defendant stated that he would go over and arrange with Mr. Scalvace to leave the car at his house. Sanders, Gordon and Phillips drove back to the 1949 Cadillac where Gordon got into it and drove it to Scalvace's house. There he met Sanders and defendant. Scalvace said he did not want to have anything to do with a stolen car. The car was then driven by Gordon to Sanders' house and kept in his garage overnight.

The next day Sanders, accompanied by defendant, went to Mr. Roberts' place of business and asked if they could store a car in his place. Roberts said it was all right with him. The three then went to the Sanders garage where defendant told Sanders it would be best if he would take one of the license plates from his 1948 Cadillac and put it on the 1949 Cadillac, whereupon this was done. Defendant then drove the stolen car from Sanders' house to Roberts' home in Laurel Canyon. The car remained in the driveway of Roberts' home for a week or 10 days.

The car was then taken to Gene's Body Shop by Sanders where they talked to a man named Bob who was told by Sanders that he had purchased a car from a finance company and as he could not get into the shop, he asked Bob to take the car home with him, which Bob agreed to do.

Thereafter the car was put into the body shop, painted black, the chrome removed and the tires changed. While it was there defendant went in and looked at it.

Subsequently defendant took the car out of the shop and stated that he would handle the matter of getting the car back to the rightful owner and that anybody connected with the case would have all charges dismissed, and he, defendant, would get $400 or $500 from the insurance company for returning the car.

Thereafter Al Weiman, at Sanders' request drove the car to Tracy, California, accompanied by Scalvace in the car with him, and Sanders and Phillips went in Sanders' Ford. When the two groups reached Tracy, Sanders had a conversation with Otto Blevins, the father of Evelyn Phillips, in which Sanders asked if he could store the Cadillac for a week or two because he was having trouble getting title to the car. Blevins said he did not have a place to keep it, but that it could be put in the garage at a friend's place. The Cadillac was driven to the garage of a Mr. Garavente by Weiman.

After the car was in the garage Scalvace took a crowbar and obliterated the motor numbers. Thereafter the police found the car in the Garavente garage.

*Question: Was the testimony of defendant's admitted accomplice sufficiently corroborated to meet the requirements of section 1111 of the Penal Code?*[*]

This question must be answered in the affirmative and is governed by these pertinent rules of law:

■ (1) Where there is evidence from which the jury may find either that a witness was or was not an accomplice of defendant, the jury's finding is binding upon an appellate court. (*People* v. *Williams*, 30 Cal.App.2d 234, 238 [85 P.2d 974]; *People* v. *Seiffert*, 81 Cal.App. 195, 197 et seq. [253 P. 189].)

■ (2) When evidence offered as corroboration tends to connect defendant with the commission of the crime in such a way as to reasonably satisfy a jury that an accomplice is telling the truth, such evidence is sufficient corroboration to meet the requirements of section 1111 of the Penal Code. (*People* v. *Trujillo*, 32 Cal.2d 105, 111 [194 P.2d 681].)

---

*Section 1111 of the Penal Code reads: ''A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.''

■ Applying the foregoing rules to the facts of the instant case, witnesses Roberts and Weiman each testified that they believed defendant was having trouble with a finance company and that this was the reason he was trying to· hide the 1949 Cadillac.

The jury was justified in believing this evidence which supports its implied finding that such witnesses were not accomplices of defendant, and under rule (1) above such finding is binding upon this court.

The fact that witness Weiman while in Tracy was near Messrs. Sanders and Blevins during which time they had a conversation by which it was disclosed that the Cadillac had been stolen does not show that such witness was an accomplice and knew the car was stolen because there is no evidence that he heard the conversation as he was some 15 or 20 feet from the parties. The jury may have believed that he did not hear the conversation and therefore that he did not know the car was stolen.

The testimony which these two witnesses gave disclosed that defendant suggested that the license plates on the 1949 Cadillac be changed which was done in defendant's presence; that the car was kept by defendant at witness Roberts' home for a week or 10 days; and that thereafter the car was transported to Tracy for the purpose of being secreted, clearly meets the requirements of rule (2) *supra*, and tended to connect defendant with the conspiracy to steal the car and the grand theft thereof. This was sufficient corroboration of the testimony of defendant's admitted accomplice to sustain the verdicts of guilty on each count.

The judgment and order are and each is affirmed.

Moore, P. J., and Wilson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 8, 1951.