Filed 8/16/16  P. v. Jacobs CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B267411 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA109195) |
| v. | |
| JAMES W. JACOBS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mike Camacho, Jr., Judge.  Affirmed.

Michele A. Douglass, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Ilana Herscovitz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

After trial by jury, defendant and appellant James W. Jacobs was convicted of manufacturing methamphetamine (Health & Saf. Code § 11379.6, subd. (a)) and sentenced to an aggregate term of six years in prison to be served in county jail. Jacobs contends that the trial court erred in admitting evidence underlying his prior conviction for possession of methamphetamine. We find no error and affirm.

## FACTS

### The Traffic Stop and Discovery of the Methamphetamine

On March 8, 2015, Jacobs was driving his Honda in the City of Industry when he was pulled over by Ivan Diaz, a reserve deputy with the Los Angeles County Sheriff's Department. Deputy Diaz ran the Honda's license plate number and found Jacobs was the owner of the vehicle and that it was registered as a planned non-operation or "PNO" vehicle. Deputy Diaz asked if there was anything illegal in the car and Jacobs said he had marijuana in the car, for which he had a medical license. Deputy Diaz lawfully searched the car and found in the trunk a glass jar that contained methamphetamine in the final stage of the manufacturing process, two bags of a green-leafy substance, and a pipe with a milky substance in the bowl.

Detective Scott Schulze, a senior narcotics detective with the sheriff's department, helped recover the items found in Jacobs's trunk. The deputies also found cans of acetone, butane fuel, and a gas additive called "Heat."[1]

Deputy Diaz placed Jacobs under arrest and read him his *Miranda*[2] rights. Jacobs waived his rights and told Deputy Diaz that the jar was not his, and that he did not know the jar was inside his trunk. Deputy Diaz then asked, "What stage of process was the glass jar in," and Jacobs answered, "It's being washed before use."[3]

---

[1]    Heat is a gas additive that contains alcohol and can be used at the beginning of the manufacturing process to extract pseudoephedrine or ephedrine from tablets, or in the last stage of the manufacturing process, during re-crystallization.

[2]    *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

[3]    "Washing" typically refers to cleaning or washing out the impurities in methamphetamine. In the final stage of re-crystallization, a solvent is introduced to

*The Criminal Case*

Jacobs was charged with one count of manufacturing methamphetamine. (Health & Saf. Code, § 11379.6, subd. (a).) It was further alleged he suffered a prior drug conviction within the meaning of Health and Safety Code section 11370.2, subdivision (b), and six convictions with a prison term. (Pen. Code, § 667.5, subd. (b).)

Before trial, the prosecution moved to admit the evidence underlying Jacobs's prior conviction for possession of methamphetamine pursuant to Evidence Code section 1101, subdivision (b).[4] The court ruled that the evidence could not be introduced in the case-in-chief but indicated it would revisit its ruling if the defense presented evidence that Jacobs did not know the methamphetamine was inside his car.

Michael West, a chemist with the Sheriff's Department Crime Lab stated that both "Heat" and acetone could be used in manufacturing methamphetamine. Upon testing the evidence taken from Jacobs's car, West concluded that it was "consistent with a processing stage in the manufacturing of methamphetamine." Specifically, the last stage of the process, where the crude product is dissolved into a solvent, which then evaporates away and leaves a more refined product. Detective Shulze also testified that because general users are not typically familiar with the term "washing," a person who uses that terminology is likely a manufacturer of methamphetamine.

Rudolph Estrada testified for the defense. Estrada is an automobile mechanic who previously worked on Jacobs's Honda. He had Jacobs's car from about June 2014 through February 2015, about a week before Jacobs was arrested for this case. Estrada testified that the doors and trunk could not be locked, and that at some point he moved the car from the street to the driveway because he noticed someone had been tampering with it. He stated that he did not access the trunk, nor did he see anyone put items in the

---

dissolve the crude product. After the solvent evaporates, a re-crystallized, purified product is left over.

[4] All further section references are to the Evidence Code unless otherwise noted.

3

trunk. Estrada drove the car to the beach once and it blew a head gasket. Estrada testified he was not able to fix the locks on the door or the trunk.

Once the defense rested, the prosecution renewed its motion to introduce evidence surrounding Jacobs's prior conviction for possession of methamphetamine. The trial court then ruled that the evidence could be admitted.

During rebuttal, Deputy Rene Arguelles testified that, during a 2014 traffic stop, he searched Jacobs and found a "clear plastic baggy containing some methamphetamine." Jacobs told Arguelles, "Shit. I did not know that was in there." After the deputy read Jacobs his *Miranda* rights, Jacobs agreed to speak with Arguelles and when asked if Jacobs knew what was found in his pocket, he responded that it was an "eight ball"[5] of "meth." Jacobs said that he had been an addict since the third grade, was tired of using, and wanted help.

The jury found Jacobs guilty of manufacturing methamphetamine, as charged. Thereafter, he admitted the prior conviction allegations. The trial court sentenced Jacobs to six years in county jail, comprised of the low term of three years for the crime and an additional three years for the prior drug conviction.

Jacobs filed a timely notice of appeal.

## DISCUSSION

Jacobs contends his conviction must be reversed because the trial court erred when it allowed the prosecutor to introduce evidence about his prior possession of methamphetamine. We disagree.

Character evidence is generally inadmissible to prove a person acted in conformity with it on a specific occasion. (§ 1101, subd. (a).) It therefore is inadmissible to establish criminal propensity. (*People v. Demetrulias* (2006) 39 Cal.4th 1, 14.) It may be admissible, however, where relevant to prove a material fact at issue, for example, motive, opportunity, intent, preparation, plan, knowledge or identity. (§ 1101, subd. (b).) "The admissibility of other crimes evidence depends on (1) the materiality of the facts

---

[5] Eight ball is a slang term used to describe at least three grams of methamphetamine.

4

sought to be proved, (2) the tendency of the uncharged crimes to prove those facts, and (3) the existence of any rule or policy requiring exclusion of the evidence." (*People v. Carpenter* (1997) 15 Cal.4th 312, 378-379, superseded by statute on other grounds as stated in *Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1106.) As the court explained in *People v. Ewoldt* (1994) 7 Cal.4th 380: "The least degree of similarity (between the uncharged act and the charged offense) is required . . . to prove intent. [Citation.] '[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . .' [Citation.] . . . [T]o be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." [Citations.]' " (*Id*. at p. 402.)

"Even if evidence of an uncharged crime is admissible under [] section 1101, subdivision (b), the evidence may be excluded under [] section 352 if its probative value is substantially outweighed by the probability its admission would unfairly prejudice the defendant, mislead the jury, or confuse the issues. (*People v. Abilez* (2007) 41 Cal.4th 472, 500; *People v. Balcom* (1994) 7 Cal.4th 414, 426-427.) A trial court's ruling to admit evidence of an uncharged crime sections 1101, subdivision (b), and 352, is reviewed on appeal under the abuse of discretion standard. (*People v. Memro* (1995) 11 Cal.4th 786, 864; overruled on other grounds in *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2.)

In order to prove Jacobs is guilty of manufacturing methamphetamine, the prosecution had to prove that defendant knew the substance being manufactured was methamphetamine. (*People v. Coria* (1999) 21 Cal.4th 868, 878-879 (*Coria*).) More specifically, the prosecution had to prove that the defendant had both knowledge of the drug's presence and it's nature. (*People v. Carrasco* (1981) 118 Cal.App.3d 936, 944-945.)

5

Jacobs argues that the evidence of the June 2014 possession of methamphetamine should have been excluded because the two offenses, possession and manufacturing, are different, like "apples and oranges." We disagree and find no abuse of discretion in the trial court's determination that evidence of the prior possession was sufficiently similar so as to prove Jacobs's knowledge of the presence of the methamphetamine in his car and to rebut his defense that someone else placed the drugs there.

The evidence underlying Jacobs's 2014 conviction for possession of methamphetamine involved a traffic stop in the same Honda that was owned by and registered to Jacobs. In both cases, Jacobs was found with the contraband, methamphetamine. Most significantly, in 2014, Jacobs also stated he did not know the methamphetamine was in his possession. The similarities between the 2014 crime and the charged crime support use of the prior acts. As a result, the 2014 crime was properly admitted to rebut Jacobs's defense that he did not know the methamphetamine was in his car and that someone else put it there.

We agree with the People that this case is like *People v. Torres* (1950) 98 Cal.App.2d 189, 192. As in this case, evidence of a prior incident where defendant possessed marijuana in a car was properly found admissible to rebut the defendant's claim in a later trial that he did not know marijuana was in the same car.

We also note that, contrary to Jacobs's claims that the two crimes are different, the knowledge requirement for manufacturing is the same as that for possession. (*Coria, supra,* 21 Cal.4th at pp. 878-879.) Accordingly, that Jacobs previously possessed methamphetamine was relevant to show he knew and was aware of the methamphetamine in his trunk.

Further, the trial court did not abuse its discretion in determining the probative value of the prior conviction was not substantially outweighed by its prejudicial value under section 352. Initially, the trial court ruled the evidence inadmissible in the People's case-in-chief, finding it was more prejudicial than probative. However, the court changed its ruling at the conclusion of the defense's case. This demonstrates the court cautiously considered the admissibility of the facts about his prior possession of

6

methamphetamine.  The court recognized the prejudicial nature of the evidence, and waited until the defense's case increased the probative value of the evidence.  Indeed, once the defense brought in evidence indicating Jacobs did not have the car until about a week before his arrest in this case, that the trunk did not lock, and that someone was seen tampering with the trunk, Jacobs's knowledge of the presence of the methamphetamine in his car became an issue for the jury to resolve.

While Jacobs is correct that the prejudicial effect of the admission of other crimes evidence increases if the uncharged act did not result in a conviction (*People v. Ewoldt, supra,* 7 Cal.4th at p. 405), defense counsel repeatedly informed the jury that Jacobs was convicted for the prior act, thus ameliorating any such issue in this case.

Finally, Jacobs's claim that the evidence was unduly prejudicial because the jury used the evidence to show his propensity to possess drugs is unavailing.  The trial court instructed the jurors with CALCRIM No. 375, which directed that it consider the evidence concerning Jacobs's prior crime for the limited purpose of establishing knowledge of possession of a controlled substance.  The court further instructed:  "Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime."  We presume the jurors understood and followed the court's instructions. (*People v. Holt* (1997) 15 Cal.4th 619, 662.)  We reject Jacobs's purely speculative supposition that the jury was likely to have disregarded the instruction and used the prior charge as propensity evidence.

## DISPOSITION

The judgment is affirmed.


BIGELOW, P.J.

We concur:



RUBIN, J.                    FLIER, J.


7