[Civ. No. 507.   Fifth Dist.   May 24, 1965.]

EDWARD L. BROWN et al., Petitioners, v. THE SUPERIOR COURT OF TULARE COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

David H. Laughlin and Robert E. Laughlin for Petitioners.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Roger E. Venturi, Deputy Attorney General, for Real Party in Interest.

CONLEY, P. J.—Edward L. Brown and Maurice Riganti, respectively charged with perjury and subornation of perjury and jointly charged with conspiracy to obstruct justice and the due administration of the laws, petition for a writ of prohibition to prevent further proceedings in the case, after the denial by the Superior Court of Tulare County of their motion to set aside the information upon the ground that they were committed for trial without reasonable or probable cause (Pen. Code, § 995).

The defendants, both truck drivers of the Valley Motor Lines operating separate rigs, were accused of concocting a story designed for the clearance of Riganti of a criminal charge of violation of the applicable provision of the Vehicle Code by driving his truck and trailer on the highway at a speed of over 50 miles per hour (Veh. Code, § 22406). This earlier charge was filed by the highway patrol, and the trial was held in the Dinuba Judicial District on the 24th day of February, 1964. The complaint charged: "That Maurice Riganti on or about the 3rd day of January, A.D., 1964, and before the filing of this Complaint, at the Dinuba Judicial District, County of Tulare, State of California, the defendant being the driver of a truck tractor, to wit: 1959 International tractor—Frew Semi trailer, (utility trailer), did drive said combination on a highway at a speed in excess of 50 miles per hour, in violation of Section 22406 of the California Vehicle Code."

Testimony was given at the preliminary hearing of the present charges that at the misdemeanor trial Edward L. Brown was called as a witness on behalf of Maurice Riganti, who there personally conducted his own defense; after taking the oath, Brown testified that at about 3 o'clock in the early morning of January 3, 1964, he had been following the vehicle, with trailer attached, operated by Mr. Riganti, and that the latter was within his view at all applicable times; that his own speedometer showed his speed to be between 48 and 49 miles per hour, and that he followed the Riganti rig for a considerable time before the arrest; inasmuch as he did not gain on the Riganti vehicle, the conclusion was clear that the latter was traveling at less than 50 miles per hour; this evidence was contrary to the testimony of the officers of the California Highway Patrol, who swore that he was driving at approximately 55 miles an hour. As a result, presumably, of the Brown testimony, the jury trying Riganti disagreed and was discharged. The formal accusations against Messrs. Brown and Riganti of perjury, subornation of perjury, and conspiracy to obstruct justice followed.

The writ of prohibition is sought on two grounds. First, it is claimed that because of a failure specifically to observe the requirements of section 40503 of the Vehicle Code, the criminal charge did not state facts sufficient to constitute a public offense and that, therefore, no perjury could have been committed by any witness irrespective of what was testified to at the trial. Secondly, it is claimed that the evidence produced at the preliminary hearing was insufficient, and that, consequently, the objection to the information under section 995 of the Penal Code should have been granted.

The leading case upon which petitioners' first point is founded is *In re Clark*, 54 Cal.App. 507, 509 [202 P. 50]. In that proceeding, the petitioner sought his discharge from the custody of the sheriff of Kings County, who held him under a commitment issued by a justice of the peace; Clark had been held to answer on a charge of perjury; it was based upon his testimony in a criminal action charging a game of "studhorse" poker prohibited by section 330 of the Penal Code. It was claimed that his testimony was patently false. The opinion of Mr. Justice James states: "In order that a charge of perjury be made out against the petitioner, it was necessary that the alleged false testimony had been given in a judicial proceeding and that the same was material to a valid issue properly made therein. If the complaint in the gaming case

failed to charge a public offense, as is asserted, then the testimony of petitioner would not amount to perjury as that crime is defined by the statute.''

The court continued by observing that it had not been alleged or proven that the game was a ''banking or percentage game'' played ''for money, checks, credit, or representative of value.''

The opinion concluded: ''The complaint charging petitioner with the alleged crime of conducting the game of stud-horse poker did not state facts sufficiently to constitute a public offense; neither did the complaint upon which the examination on the charge of perjury was had state a public offense, for the reason that it was deficient in its reference to the former complaint in the same particular as has been pointed out'', and the court ordered that the petitioner be discharged.

Assuming the persistence and the propriety of this rule, it becomes necessary to inquire whether the complaint in the criminal case at which the defendant Brown testified did in fact state a criminal offense.

Section 40503 of the Vehicle Code provides: ''Every notice to appear and every complaint or information charging a violation of any provision of this code regulating the speed of vehicles upon a highway shall specify the approximate speed at which the defendant is alleged to have driven and exactly the prima facie or maximum speed limit applicable to the highway at the time and place of the alleged offense and shall state any other speed limit alleged to have been exceeded if applicable to the particular type of vehicle or combination of vehicles operated by the defendant.''

Section 15 of the Vehicle Code states: '' 'Shall' is mandatory and 'may' is permissive.''

The offense with which Riganti was charged relates to speed of vehicles upon a highway; the applicable section of the Vehicle Code reads as follows: ''22406. TRUCK SPEED. Any motor truck or truck tractor having three or more axles or any motor truck or truck tractor drawing any other vehicle, shall not be driven on any highway at a speed in excess of 50 miles per hour.''

It should be noted that section 40503 does not specifically provide that the requirements thereof must be complied with in order to state a public offense. No penalty is attached to a failure to comply with the terms of the section, and the code provision is contained in chapter 2, division 17

of the Vehicle Code which is headed ''Procedure on Arrests'' and which provides in section 40300: ''The provisions of this chapter shall govern all peace officers in making arrests for violations of this code without a warrant for offenses committed in their presence, *but the procedure prescribed herein shall not otherwise be exclusive of any other method prescribed by law for the arrest and prosecution of a person for an offense of like grade.''* (Italics added.)

It is, at most, directory rather than mandatory and it does not obviate the patent fact that the general rules with respect to charging an offense, either of the grade of misdemeanor or felony, have been greatly simplified during the past few years. In 26 California Jurisprudence Second Edition, Indictment and Information, section 38, pages 494-495, it is said: ''The statutes have relieved the administration of criminal law of much of the unnecessary strictness of the older English forms of pleading. They have abolished the subtle distinctions and technicalities formerly required in indictments, and have worked a change in pleading and practice in criminal actions similar to that wrought by the Code of Civil Procedure in civil actions. Moreover, the amendments in 1927 and 1929 of the statutes relating to pleadings in criminal cases further liberalized the rules of pleading in criminal prosecutions, and the sufficiency of an accusatory pleading is not to be tested either by the rigorous rules of the common law or by the rules that existed before the statutory amendments of 1927 and 1929. The pleading is formally sufficient if, in substance, it charges the defendant with the commission of a public offense in words sufficient to give him notice of the offense of which he is accused. Only the essential elements of the offense need be charged.''

As stated in *People* v. *Barry,* 153 Cal.App.2d 193, at page 202 [314 P.2d 531], in regard to the sufficiency of an information for perjury after the 1927 amendments aimed at the simplifying of criminal pleadings: ''A further answer may be made to appellant's attack upon the sufficiency of the information by the oft repeated statement that the purpose of an indictment or information is simply to inform the accused of the charge which he must meet at the trial (Pen. Code, § 952). In *People* v. *Curtis,* 36 Cal.App.2d 306, 317 [98 P.2d 228], this court stated: 'As was said in *People* v. *Beesly,* 119 Cal.App. 82 [6 P.2d 114, 970]: ''There, in a nutshell, is stated the principle of our present simplified form of pleading a criminal offense—the accused is entitled to notice of the

offense of which he is charged but not to the particular circumstances thereof, . . .'' '' '' (*Renk* v. *Municipal Court*, 213 Cal.App.2d 132 [28 Cal.Rptr. 681]; *People* v. *Maggiora*, 207 Cal.App.2d Supp. 908, 910 [24 Cal.Rptr. 630].)

██ It should be observed further that no objection was made to the form of the charge previous to, or at, the trial of the misdemeanor. The case was heard on the basis of the complaint as quoted in this opinion; it gave notice to Riganti in concise and specific language of what the accusation consisted. It cannot now be claimed that the defendant did not then know of what he was accused or that he did not have a complete grasp of everything involved in the criminal charge.

It is our conclusion that if there was any defect in the misdemeanor pleading, it was entirely procedural in nature and that it was effectively waived for all purposes; the charges contained in the present information cannot be said to fail to state perjury, subornation of perjury, and conspiracy to obstruct justice, respectively, by reason of the first point urged by the petitioners.

Moving to a consideration of the second ground urged by the defendants, namely, that the evidence did not warrant the filing of the information in the trial court, we find the contention to be entirely without merit.

██ It is, of course, essential to keep in mind that the evidence at the preliminary examination of a felony charge does not have to be conclusive of guilt; it is sufficient if it induces a belief amounting to a strong suspicion that the defendants have committed the offenses charged. (*Jackson* v. *Superior Court*, 62 Cal.2d 521, 525 [42 Cal.Rptr. 838, 399 P.2d 374]; *People* v. *Ketchel*, 59 Cal.2d 503, 532 [30 Cal.Rptr. 538, 381 P.2d 394]; *People* v. *Chapman*, 93 Cal.App.2d 365, 370 [209 P.2d 121]; *In re Plummer*, 79 Cal.App.2d 651, 654-655 [180 P.2d 771].)

██ There is evidence that in the early morning hours of January 3, 1964, a truck driver for Pacific Motor Trucking named Lawrence Andrada, while operating his company's truck southward on U. S. Highway 99 near the Traver Overpass, saw a California Highway Patrol car enter the highway heading southward; obscured by the fog, the patrol car momentarily disappeared from his view; soon afterwards, while he was still in the Traver area, the witness's truck was passed by the Valley Motor Lines vehicle operated by Riganti; it remained directly in front of him for approximately four or five miles, until it was stopped by the Highway Patrol.

The witness had remained an approximate minimum of 60 yards behind the Valley Motor Lines truck for this entire distance, and no other truck passed the witness or pulled in between the two trucks until the officers stopped them. The record shows that the highway patrol officers had been clocking another automobile suspected of speeding when the driver, Officer Ellis, noticed headlights overtaking the patrol car from behind. The officers maintained their speed of 54 miles per hour and both of them soon saw from behind them the onrushing headlights and the clearance lights which identified the vehicle as a truck; it proved to be Riganti's vehicle. Finally, Riganti pulled his truck around the patrol car stopping in front of it, and the witness, Andrada, stopped behind the patrol car.

From the time that the officers first realized they were about to stop a truck belonging to Valley Motor Lines, they maintained an unusually close surveillance of vehicular traffic, especially for other Valley Motor Lines trucks. It was testified that the two trucks and the patrol car had been stopped for approximately two or three minutes before any other vehicles caught up with or passed them. The officers did not see any other Valley Motor Lines trucks in the vicinity at any time. Defendant Riganti was cited for driving at approximately 55 miles per hour when the maximum speed limit for the vehicle was 50 miles per hour, in violation of section 22406 of the California Vehicle Code.

The corroborating evidence, in part, consists of trucking company driver records. They tend to establish, among other things, that Brown was in a city a considerable distance away at the time the citation was entered.

The story told by Brown under oath was that he had been following behind Riganti's truck; that he eventually caught up with Riganti at the Kings River Bridge and remained behind him from that time until Riganti was stopped by the highway patrol. He was always close enough, he said, to read the sign on Riganti's truck and never fell more than 500 feet behind him. He said that he was close behind Riganti when the officers stopped him. He had maintained a speed of 49 miles per hour until he pulled out and passed Riganti's truck when the officers stopped that vehicle. The officers never saw the Brown truck, although they paid particular attention to vehicular traffic at that time.

It would seem that there was ample evidence to justify the action of the committing magistrate in holding the de-

fendants to answer. If Andrada and the officers were correct, Brown necessarily swore falsely. And it should be remembered that Riganti conducted his own defense of the criminal charge and as such presumably knew what his witness, Brown, would testify to; the effect of the prosecution's evidence would justify an inference on the part of the magistrate that Riganti was guilty of subornation of perjury in such circumstances. (*Benson* v. *Superior Court*, 57 Cal.2d 240 [18 Cal.Rptr. 516, 368 P.2d 116]; *People* v. *Haley*, 102 Cal.App.2d 159, 164 [227 P.2d 48]; *People* v. *Gray*, 52 Cal.App.2d 620, 653 [127 P.2d 72].) It is obvious in the circumstances that, if there was sufficient evidence to show perjury and subornation of perjury, there was also sufficient proof to indicate inferentially a conspiracy between the two defendants to defeat the ends of justice. The overt act is sufficient, as charged, to warrant such a prosecution. (*People* v. *Saugstad*, 203 Cal. App.2d 536, 548-550 [21 Cal.Rptr. 740]; Pen. Code, § 182, subd. 5.)

The petition for a peremptory writ of prohibition is denied and the temporary restraining order dissolved.

Brown (R.M.), J., and Stone, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied July 21, 1965.