[Crim. No. 14294. Second Dist., Div. Four. Aug. 21, 1968.]

THE PEOPLE, Plaintiff and Appellant, v. JOSEPH ANGEL GARCIA, Defendant and Respondent.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood, Donald J. Kaplan and Maurice H. Oppenheim, Deputy District Attorneys, for Plaintiff and Appellant.

Dahlstrum, Walton & Butts, Richard A. Walton and G. Merle Bergman for Defendant and Respondent.

KINGSLEY, J.—This is an appeal by the People from the granting of the motion by defendant to dismiss, pursuant to Penal Code section 995, a charge of violating section 187 of the Penal Code (murder).

Sylvia Garcia testified that she had been living with defendant Garcia as his common law wife. Troy King, the victim, was a friend of hers and Garcia's, and King had lived with them at their Sunset Boulevard residence for several weeks. About the time that King moved from the Sunset Boulevard residence, Garcia spent 15 days in jail. When Garcia was released he asked King not to come around any more. A few days later King came to the house and caused a "scene." King brought two guns and two hatchets to the house and challenged Garcia to a duel with either of the weapons. King called Garcia a coward for not fighting. The "scene" was about Sylvia and King thought she was going to leave Garcia for him. In the course of refusing to fight, Garcia told King that he never shot a man and King said, "Well, I have." King told Garcia to stop "harassing" Sylvia, and that if Garcia ever mistreated her, King would kill him. Sylvia told King that she was not harassed, King calmed down, apologized, and left with his guns and hatchets. King apologized again the next day.

Sylvia testified that King threatened to kill Garcia on several occasions, and King had a gun with him on a few of his subsequent visits to the house. King came to the house almost every day the following month, provoked additional scenes, and used profanity towards Garcia. Sylvia and Garcia were upset and decided to contact the police. Garcia borrowed a rifle.

On June 14, 1967, Sylvia, Garcia, and a friend Burt, went out to breakfast. She and Burt returned to the house at 5 or 5:30 a.m. Burt carried in some groceries and left. King came over to the house, Sylvia tried to call Garcia to tell him that King was there, King became upset and later Garcia came in. King asked Sylvia to call a cab and King left. After King left Sylvia told Garcia that King said he was going home to get his gun and was coming back. Garcia locked the doors and windows, turned off the lights and closed the curtains at about 6 a.m. Garcia told Sylvia to stay on the floor because King knew where the bed was located and he might shoot through the window. Sylvia fell asleep on the floor and was awakened by a rattling noise at the back door which lasted about a minute. It was quiet a few minutes and then she heard a shot. She called Garcia and got no reply. The back door had two chains and a bolt on it. She did not actually see Garcia leave the bedroom but she thought he left at the time of the noise. Sylvia testified that she did not hear too well,

always having to ask people to repeat what they said, and she doubted whether she could have heard even a loud conversation at the back door. Sylvia was in a state of being half asleep or barely awake.

Sylvia went to the back, saw Garcia standing inside the back door and King lying down just outside the back door. There was a hole in the door and after the police arrived Sylvia saw an overnight bag on the porch. Sylvia said that Garcia had been holding a rifle.

On cross-examination Sylvia said that King had not made romantic advances to her and that when King told her he was going to kill Garcia, Sylvia told Garcia what King said to her.

Officer Wheeler arrived at 6:45 a.m. after getting a call about the shooting at 6:30 a.m. Garcia raised the rifle in the air and said, "Don't shoot. Don't shoot. I shot him and I called you." Officer Wheeler found a small overnight bag near King's body. The bag was zipped closed. It contained a box of keys, a pistol in a holster with ammunition in the pistol, but no bullet in the chamber.

Garcia had a prior felony conviction. Garcia testified that about 10 minutes after King left, Garcia heard a noise that sounded as though someone was trying to walk in. Garcia picked up a rifle and asked King what he wanted. King said he forgot something. Garcia asked him not to come around. King asked to use the telephone, and after being told to use the extension in the garage said, "You know, it is going to cause trouble if you don't let me in." King said that he was "packing" which, according to Garcia, meant he was carrying a gun. Garcia saw King step back and apparently move toward his belt and Garcia knew that King used to carry his gun in his belt. King hit the door with his body, broke the window, and Garcia told King to go away. King hit the door several times with his body, and on the third or fourth time Garcia fired the rifle.

The sole question on appeal is whether the court erred in granting a motion to dismiss the information.

 We find no error since there was insufficient evidence to cause the magistrate to hold the defendant to answer to the charge of murder.[1]

The People assert that the magistrate was not bound by

[1]Penal Code section 1238 authorizes an appeal by the People from an order setting aside the information. (*People* v. *Valenti* (1957) 49 Cal.2d 199 [316 P.2d 633].)

defendant's version of the story. To support their view of the evidence, the People point out that Garcia didn't call the police, that Garcia borrowed a rifle a few weeks before the homicide, that Garcia never actually saw King remove a weapon, that Sylvia testified that, after hearing the rattling at the door, it was quiet, and that Garcia testified that after the rattling noise King hit the door with his body several times. ■ In considering the propriety of a motion to set aside an information pursuant to Penal Code section 995, the trial court may not substitute its judgment as to the weight of the evidence for that of the committing magistrate. (*Perry* v. *Superior Court* (1962) 57 Cal.2d 276 [19 Cal.Rptr. 1, 368 P.2d 529].)

■ The People also argue that " 'When the killing is proved to have been committed by the defendant, and nothing further is shown, *the presumption of law is that it was malicious and an act of murder*; . . .' " (*Jackson* v. *Superior Court* (1965) 62 Cal.2d 521, 525-526 [42 Cal.Rptr. 838, 399 P.2d 374].) However, the case before us is not a case where nothing further is shown. There is Garcia's testimony relating to self-defense, which is corroborated by Sylvia's testimony. Further, an overnight bag with a gun in it was found by the decedent's body. There was more than sufficient evidence in the case at bench to overcome the presumption referred to in the *Jackson* case.

The People also argue that in *People* v. *James* (1950) 99 Cal.App.2d 476 [222 P.2d 117], and *Jackson* v. *Superior Court, supra,* 62 Cal.2d 521, the evidence of provocation or self-defense was insufficient. These cases do not aid the People. Each case must turn on its own facts, and the factual situation in the case before us is dissimilar to the factual situations in the cases cited by the People. In the case before this court defendant was in his own home when the victim, apparently armed with a pistol in an overnight bag, provoked a fight and attempted to break in. There is no evidence to the contrary, and the evidence of self-defense is clear and convincing.

■ "Reasonable or probable cause" required to uphold a commitment means a state of facts as would lead a man of ordinary caution to believe and conscientiously entertain a strong suspicion of the guilt of defendant and may exist although there is some room for doubt. (*Lorenson* v. *Superior Court* (1950) 35 Cal.2d 49 [216 P.2d 859]; *People* v. *Brice*

(1965) 234 Cal.App.2d 258 [44 Cal.Rptr. 231]; *Brown* v. *Superior Court* (1965) 234 Cal.App.2d 628 [44 Cal.Rptr. 519]; *People* v. *George* (1949) 95 Cal.App.2d 425 [213 P.2d 33].)
■ The evidence before us does not present a "strong suspicion of the guilt of defendant." A person has a right to be free from prosecution for a crime unless there is some valid ground for assuming the possibility that he is guilty. (*Jensen* v. *Superior Court* (1950) 96 Cal.App.2d 112 [214 P.2d 828].)

The order is affirmed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied September 12, 1968, and appellant's petition for a hearing by the Supreme Court was denied October 17, 1968.