[Crim. No. 14077. Second Dist., Div. One. Aug. 30, 1968.]

THE PEOPLE, Plaintiff and Appellant, v. JOSEPH V. POE, Defendant and Respondent.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Plaintiff and Appellant.

Joseph T. Vodnoy, under appointment by the Court of Appeal, for Defendant and Respondent.

WOOD, P. J.—In an information, defendant was accused in two counts of perjury. Count 1 alleged in substance that defendant knowingly and falsely answered material questions while under oath at a hearing before a referee appointed by the Supreme Court on defendant's petition for a writ of

habeas corpus. (His answers were in effect that he was subjected to brutality by police officers at the time of his arrest.) Count 2 alleged in substance that at said hearing defendant knowingly and falsely testified that police officers had threatened defendant.

Defendant made a motion, in the superior court, to set aside the information, under section 995 of the Penal Code. The motion was granted as to count 1, and was denied as to count 2. The People appeal from the order setting aside count 1 of the information.

The proceedings with reference to defendant's petition for a writ of habeas corpus in the Supreme Court are reported in *In re Poe,* 65 Cal.2d 25 [51 Cal.Rptr. 896, 415 P.2d 784]. The petition attacked the legality of defendant's confinement under a judgment of conviction of kidnaping for the purpose of robbery. (The judgment was entered upon his plea of guilty.) In *In re Poe, supra,* pages 26-27, it was said: "The petition [for a writ of habeas corpus] alleged facts which, if true, would have supported findings that a confession was obtained from him by means of mental or physical coercion imposed by the police and that his plea of guilty was induced either by that coercion or by constitutionally inadequate representation of counsel." After a hearing on the petition, the referee found, among other things, that petitioner's confession was not the product of mental or physical coercion by the police, that his plea of guilty was not induced by mental or physical coercion on the part of the police, and that he was not inadequately represented by counsel. The Supreme Court said that the findings of the referee were fully supported by the evidence.

At the preliminary examination (on the perjury charge), the People called eight witnesses. Exhibits received in evidence included defendant's petition for a writ of habeas corpus and the transcript of the hearing thereon.

Some of the testimony of defendant at the habeas corpus hearing[1] was as follows:

(Vol. 1, pages 9 and 10, of Reporter's Transcript.)

"QUESTION: And would you state where you were arrested and the circumstances surrounding your arrest?

---

[1]Portions of defendant's testimony which related to alleged threats by other officers after defendant's arrest will be excluded since such testimony pertains to count 2 of the information (which was not set aside). The testimony was to the effect that the officers threatened to "send us all to the gas chamber in San Quentin and see that our friends went to prison for life." (See *In re Poe, supra,* p. 28.)

"ANSWER: I was arrested at approximately 10:30, perhaps 11:00 o'clock on the evening of July 26th, and I believe that to be a Thursday. I approached the—I had just parked my fiancee's car and left it on the street and entered a patio and approached a door of the apartment. I had no sooner finished knocking when the door was flung open and I there was faced by three men who had pistols in their hands.

". . . . . . . . . . . . .

"QUESTION: All right. Proceed.

"ANSWER: And one officer, who I later determined to be an officer because of the handcuffs, if my memory serves me right, it was a Detective Jones, grabbed my right wrist and jerked me, and I was hit behind the left ear with a, by one officer, and I'm quite sure he had his gun in his hand when he hit me.

"QUESTION: And what happened thereafter?

"ANSWER: I fell to the floor. And Detective Jones still had a hold of my right wrist. And all three officers began to punch and kick me."

(Vol. 1, page 89, of transcript.) "QUESTION: What were the circumstances of that arrest?

"ANSWER: Detective Jones, who I ascertained immediately was Detective Jones after the arrest, grabbed my right wrist and pulled me inside. And I was hit from the left as I stumbled in, and I fell on my knees. And there were two other officers there. I don't know who they were.

". . . . . . . . . . . . .

"QUESTION: What were you hit with?

"ANSWER: I get the impression that I was hit by the officer with his pistol in his hand. But I was hit pretty hard.

"QUESTION: Where were you hit, what part of your body?

"ANSWER: Under the ear, the left ear (indicating)."

(Vol. 1, pages 90 and 91, of transcript.) "QUESTION: And then what happened?

"ANSWER: Then I was kicked in the stomach and was punched some more behind the ear. And I laid there on the floor, and I imagine I was stunned. But I was ultimately dragged to my feet and I was handcuffed. I was searched. And I had the impression that the apartment was searched and they were searching it again, and I was searched. I felt them going through my pockets and everything.

"QUESTION: Did you see who punched and who kicked you?

"ANSWER: I don't remember who punched me. I know it was from my left.

"QUESTION: How many times were you punched?

"ANSWER: I don't recall; more than once.

"QUESTION: Did you see who punched you?

"ANSWER: No. I was down on the floor.

"QUESTION: You were on the floor when you were being punched?

"ANSWER: That's right.

"QUESTION: And you were being kicked, as well?

"ANSWER: Yes, sir."

At the hearing, the arresting officers (Jones, Thill, Campbell) each testified in substance that defendant was arrested and handcuffed, a gun was removed from his waistband, and he "was neither punched nor kicked nor thrown to the floor." (See *In re Poe, supra,* p. 29.)

At the preliminary examination herein, Officers Jones, Thill, and Campbell each testified in substance that defendant was arrested in an apartment and was handcuffed, a "pat down" search was made of his person, he was handcuffed, a gun was removed from his waistband, and he was not hit, kicked, or thrown to the floor. Officer Staal testified that he and Officer Freeland arrived at the apartment about 11 p.m. (the arrest was between 10:30 p.m. and 11 p.m.), and they transported defendant to the police station; defendant did not complain of any "physical encounters" with the arresting officers; there was no blood on him; and a photograph (Exhibit 3, photograph of defendant when he was booked) fairly depicts defendant's physical condition when he was transported to the police station. Officer Freeland testified that there were no bruises or physical marks on defendant's body when he (officer) arrived at the apartment about 11 p.m.; defendant was booked at 11:20 p.m.; defendant did not complain about "any physical abuse"; he (officer) made the photograph (Exhibit 3) of defendant about 11:30 p.m.; and the photograph fairly depicts defendant's physical condition at that time. (The photograph, which was also presented in evidence at the habeas corpus hearing, "shows no marks of violence" on defendant [see *In re Poe, supra,* p. 29].) Officer Van Senus testified that he booked defendant at 11:20 p.m.; the photograph (Exhibit 3) fairly depicts defendant's physical condition when he was booked; and defendant did not complain about being struck or injured by any officers.

 Appellant contends that the court erred in setting aside count 1 of the information.

Section 995 of the Penal Code provides in part, as above

stated, that an information must be set aside if the defendant has been committed without reasonable or probable cause.

▮ "On a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate acting as a man of ordinary caution or prudence, would conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated." (*People* v. *Jablon*, 153 Cal.App.2d 456, 459 [314 P.2d 824]; Witkin, Cal. Criminal Procedure (1963) Proceedings Before Trial, p. 212, § 226; see *People* v. *Willmirth*, 247 Cal.App.2d 513, 515 [55 Cal.Rptr. 678].) ▮ "A court may not substitute its judgment as to the weight of the evidence for that of the magistrate. If there is some evidence to support the information, the courts will not inquire into its sufficiency." (*People* v. *Jablon, supra,* p. 459; see *People* v. *Willmirth, supra,* p. 515.)

▮ In the present case wherein the defendant was charged with two counts of perjury, the committing magistrate found that there was reasonable cause to believe that defendant committed the offenses alleged in the complaint. The superior court set aside count 1 of the information (which related to one of the offenses alleged in the complaint).

In the superior court, upon defendant's motion to set aside the information, he argued as to count 1, that the alleged perjured testimony which is the subject of count 1 was not material to the habeas corpus proceedings wherein the testimony was given; and that the testimony of the officers at the preliminary examination was not corroborated and was therefore insufficient evidence of perjury. On this appeal defendant reasserts those points, but he does not contend (as he contended at the preliminary examination) that public policy might prohibit perjury prosecutions which are based on false statements made in habeas corpus proceedings. (See *People* v. *Pierce,* 66 Cal.2d 53 [56 Cal.Rptr. 817, 423 P.2d 969], which related to the sufficiency of evidence presented at a preliminary examination upon a charge of perjury—based upon statements made by a defendant in a habeas corpus petition. See 2 Witkin, Cal. Crimes, 1967 Supp., Crimes Against Governmental Authority, p. 60, § 853.)

▮ An element of the crime of perjury is that the person under oath falsely stated "any material matter." (Pen.

Code, § 118; see 2 Witkin, Cal. Crimes, *supra*, p. 794, § 846.) The test of materiality "is one of *tendency to influence*; hence a false statement having such a tendency may be perjury even though 'it did not, in fact, affect the proceeding in or for which it was made. It is sufficient that it was material, and might have been used to affect such proceeding.' " (2 Witkin, Cal. Crimes, *supra*, p. 795, quoting from Pen. Code, § 123. See *People* v. *Pierce, supra,* 66 Cal.2d 53, 61, wherein it is said: "The test is whether the statement could probably have influenced the outcome of the proceedings. . . .") In *People* v. *Barry,* 153 Cal.App.2d 193, 211 [314 P.2d 531], it was said that " 'the false testimony need not be directly material. It is sufficient if it is circumstantially material, the degree of materiality being unimportant.' "

In the present case, as previously stated, defendant's petition for a writ of habeas corpus "alleged facts which, if true, would have supported findings that a confession was obtained from him by means of mental or physical coercion imposed by the police and that his plea of guilty was induced either by that coercion or by constitutionally inadequate representation of counsel." (*In re Poe, supra,* pp. 26-27.) At the hearing of the petition before the referee, defendant gave lengthy testimony, some of which is set forth above, to the effect that the officers had struck, hit, and kicked him when he was arrested; and the Supreme Court, in reviewing the testimony, said (p. 27): "The first issue presented is whether petitioner's confession to the foregoing crimes was the product of mental or physical coercion by the police." It thus appears that the statements made by defendant (under penalty of perjury) in the petition, and his testimony at the hearing, with reference to alleged physical coercion by the officers at the time of his arrest, tended to influence the outcome of the habeas corpus proceeding and were material to the proceeding. Defendant's contention that such statements and testimony were not material to the proceeding is without merit.

Defendant also contends, as above stated, that the testimony of the officers at the preliminary examination was not corroborated. He argues to the effect that the testimony of the three arresting officers was "cumulative, and not corroborative"—that their testimony was merely the testimony of "one witness" within the meaning of section 1103a of the Penal Code (which section provides that perjury must be proved by the testimony of two witnesses, or one witness and

corroborating circumstances). There were corroborating circumstances herein—there was a photograph of defendant, taken when he was booked at the police station, which "shows no marks of violence." Furthermore, it has been held that "the proof requirements of section 1103a of the Penal Code apply only to the trial and not to the preliminary examination." (*People* v. *Davidson*, 227 Cal.App.2d 331, 337 [38 Cal. Rptr. 660]; see *People* v. *Thomas*, 90 Cal.App.2d 491, 494 [203 P.2d 567].)

The order setting aside count 1 of the information is reversed.

Fourt, J., and Lillie, J., concurred.